No. 01–1080.  TRANS UNION LLC *v.* FEDERAL TRADE COMMISSION. C. A. D. C. Cir.  Certiorari denied.

JUSTICE KENNEDY, with whom JUSTICE O'CONNOR joins, dissenting.

Petitioner Trans Union LLC is one of three major credit reporting agencies in the United States.  Its business consists of three

activities: (1) traditional credit reporting; (2) prescreening individuals for offers of credit or insurance; and (3) the creation of target marketing lists. The lists in the third category are at issue in this case. They contain the names and addresses of individuals who meet specific criteria such as having obtained an auto loan or two or more mortgages, or having a department store credit card. Marketers purchase these lists, then contact the individuals by mail or telephone to offer them goods and services.

In 1994, the Federal Trade Commission (FTC) issued a decision holding that the information communicated by petitioner's target marketing lists were "consumer reports," the sale of which is prohibited by the Fair Credit Reporting Act (FCRA), 84 Stat. 1128, 15 U. S. C. § 1681 *et seq.* The Court of Appeals for the District of Columbia Circuit rejected petitioner's subsequent First Amendment challenge to the FTC's decision. 245 F. 3d 809 (2001). Relying on our decision in *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.,* 472 U. S. 749 (1985), the Court of Appeals held that the information communicated by petitioner's target marketing lists is subject to reduced constitutional protection because it "is solely of interest to the company and its business customers and relates to no matter of public concern." 245 F. 3d, at 818. The court determined that the FTC's ban survived this reduced level of scrutiny despite two arguments from petitioner. First, petitioner urged that an opt-out requirement would be a less restrictive means to achieve the Government's stated purpose. Second, petitioner argued that the FTC's decision does little to protect consumer privacy because credit card companies are still permitted to make widespread disclosures of more invasive information about consumers.

In my view this case meets the standards for review by this Court. The plurality opinion in *Dun & Bradstreet* concluded that a false statement in a credit report was not speech on a matter of public concern, as that term is used in the context of defamation law. It is questionable, however, whether this precedent has any place in the context of truthful, nondefamatory speech. Indeed, *Dun & Bradstreet* rejected in specific terms the view that its holding "leaves all credit reporting subject to reduced First Amendment protection." 472 U. S., at 762, n. 8. The Court of Appeals, nonetheless, relied on *Dun & Bradstreet* to denigrate the importance of this speech. A grant of certiorari is warranted to weigh the validity of this new principle.

Even accepting the Court of Appeals' distinction between public and private speech, it appears that petitioner's speech touches upon matters of public concern. The Government concedes the speech is essential to the purchasing decisions of millions of Americans. In addition, many charitable and political organizations use the information provided in petitioner's marketing information to solicit support for their causes.

In light of the fact that the FCRA permits prescreening—the disclosure of consumer reports for target marketing for credit and insurance, § 1681b(c)(1)(B)(i)—the FTC's decision to ban target marketing lists is nonsensical. Prescreening entails the disclosure of detailed credit performance information, including bill payment history. Release of this information is far more invasive of consumer privacy than release of the names and addresses contained in petitioner's target marketing lists. Like target marketing, prescreening touches a vast majority of American adults; credit providers extended close to 1.8 billion credit prescreening offers to American consumers in 1997. And the public value of prescreening is not obviously greater than that provided by other forms of target marketing; only about 1 to 2 percent of consumers who receive prescreening offers respond to them.

This case has important practical implications. Petitioner, one of only three major credit reporting agencies in the United States, faces bankruptcy as a result of the decision of the Court of Appeals. Petitioner has been named as a defendant in a series of class actions brought under the FCRA, allegedly on behalf of the 190 million individuals in petitioner's database. Because the FCRA provides for statutory damages of between $100 and $1,000 for each willful violation, petitioner faces potential liability approaching $190 billion. If the Court of Appeals' decision is given collateral-estoppel effect in these class actions (as the class-action plaintiffs seek), petitioner will face crushing liability. The company's demise will have adverse effects on both the national economy and petitioner's thousands of employees.

This case is of national importance, and the Court of Appeals has adopted a novel approach to commercial speech. I would grant the petition for certiorari.